GNAT, Appellant, vs. WESTCHESTER FIRE INSURANCE COMPANY OF NEW YORK, Respondent.

*March 8—April 3, 1918.*

*Principal and agent: Ratification of unauthorized contract: Fire insurance: "Procuring" further insurance: Avoidance of policy.*

1. A person cannot retain the avails of an unauthorized contract, made for his benefit by another assuming to act as his agent, and repudiate the responsibilities of such contract, and any attempt so to do, with full knowledge of the facts, constitutes a ratification of the unauthorized act and creates a liability on the part of such person to the same extent as if such contract were originally authorized.

2. After a father had, in February, insured his dwelling in the defendant company, his son gave him a policy in another company which he had procured in the previous December as a Christmas present. The father accepted the policy from the son,

retained it, and, after the dwelling was burned, was paid by that company its share of the loss. *Held* that, whether the act of the son was an agency transaction, the making of a contract by one for the benefit of another, or a gift, the father had, by ratification or acceptance, "procured" further insurance in violation of a condition in defendant's policy.

APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge. *Affirmed.*

This is an action to recover on a fire insurance policy. The jury returned a verdict in favor of the plaintiff. The court ordered judgment in favor of the defendant notwithstanding the verdict, and from the judgment so entered plaintiff appealed. The facts are sufficiently stated in the opinion.

For the appellant there was a brief by *Kreutzer, Bird, Okoneski & Puchner* of Wausau, and oral argument by *C. B. Bird.*

For the respondent the cause was submitted on the brief of *E. D. Minahan* of Rhinelander.

OWEN, J.   John Gnat, son of *Vincent Gnat,* who was a locomotive fireman, hearing his father and mother discussing the matter of procuring fire insurance on their dwelling, outbuildings, and contents, concluded to make them a Christmas present of a fire insurance policy on such property. On the 17th day of December, 1915, he applied to an insurance agent, Mr. Teal, of Rhinelander, for insurance on the property of his father above mentioned, and a policy was accordingly issued in the name of *Vincent Gnat* which went into effect December 29, 1915. This policy was delivered to John Gnat about January 10th. He carried it in his pocket until about February 22d, when he presented it to his father. John Gnat's testimony as to what occurred when he presented the policy to his father is as follows:

"He said to me, 'Why, I have got a policy already,' and I says, 'You have!' He said, 'Yes,' and I says, 'When did you

get it?' He said, 'About 2d of February.' I said, 'Who did you get it from?' He said, 'From Barnes & Weesner.' Well, I says, 'Too bad. I have got this for you for a Christmas present.' He didn't know what to do then; so it was getting kind of late and I had been working about fifteen or sixteen hours, was tired and sleepy, and so went to bed. I don't know what my father did with it then."

The father testified: "I didn't return that policy that my son gave me because I didn't know that it would hurt my policy." It is undisputed that he kept both policies in a private box in his dwelling. On January 21, 1916, the house with its contents covered by the insurance was completely destroyed. The Globe & Rutgers Fire Insurance Company adjusted and paid the loss under its policy. The *Westchester Fire Insurance Company of New York* refused to make adjustment or settlement under its policy, and this action was brought to recover on the policy issued by it to *Vincent Gnat* on the 2d day of February, 1916.

The policy was a standard form, and, as provided by sec. 1941—46, Stats., contained this provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The defense is that this provision of the policy was violated by the procurement of the issuance of the policy by the Globe & Rutgers Fire Insurance Company of New York.

Appellant contends he did not procure the issuance of the Globe & Rutgers policy, but that said policy was procured by his son without his consent or authority, and that *he* did not procure the issuance of subsequent insurance in violation of the provision of the policy above quoted. This might have been the situation up to the time he acquired knowledge of the existence of the Globe & Rutgers policy; but, having accepted the Globe & Rutgers policy, placed it in his private

box along with his other policy, and having made adjustment with the Globe & Rutgers Company for its part of the loss, he is not now in a position to deny that the subsequent policy was procured by him. A person cannot retain the avails of an unauthorized contract, made for his benefit by another assuming to act as his agent, and repudiate the responsibilities of such contract, and any attempt so to do, with full knowledge of the facts, constitutes a ratification of the unauthorized act and creates a liability on the part of such person to the same extent as if such contract were originally authorized. *McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375; *Fraser v. Ætna L. Ins. Co.* 114 Wis. 510, 90 N. W. 476; *Twentieth Century Co. v. Quilling,* 136 Wis. 481, 487, 117 N. W. 1007.

It is further contended that the procurement of the insurance by the son was not an agency transaction; that the son procured it on his own responsibility and presented it to his father as a gift. We shall not spend much time in analyzing this transaction with a view of determining whether it was an agency transaction, a contract made by one for the benefit of another, or a gift. The acceptance and retention of the policy by the father was wholly inconsistent with the contention that it was not regarded by him as a binding contract and valid policy of insurance for his benefit. This is especially true in view of his statement that he did not know that "it would hurt his policy," and the fact of his making settlement with the Globe & Rutgers Company adds still greater certainty in the matter of his intentions and purposes in accepting and retaining the Globe & Rutgers policy. But whatever his intentions, it clearly was his duty to repudiate the action of his son in procuring this insurance and to refuse to accept the policy. This he did not do. If the transaction was with an unauthorized agent, he ratified the act; if it was that of a contract made by one for the benefit of another, he adopted it; and if it was a gift made by son to

father,.he accepted the gift.    So that in any view we take of the nature of the transaction the result is the same.    It must be held that plaintiff's conduct at the time his son presented him with the Globe & Rutgers policy amounted to the procuring of further insurance on the property in violation of a condition in the policy sued upon, and that by reason of such breach he cannot recover here.    This was the ruling, under similar circumstances, in *McKelvy v. German-American Ins. Co.* 161 Pa. St. 279, 28 Atl. 1115, and *German Ins. Co. v. Emporia M. L. & S. Asso.* 9 Kan. App. 803, 59 Pac. 1092, and cases cited in the opinion.

We fully appreciate the loss to which plaintiff has unwittingly subjected himself, and regret the consequences to him. The provision of the statute, however, here under consideration is intended to prevent the securing of over-insurance and the consequent incentive to incendiarism.    It is founded on sound public policy, and it is better that the plaintiff be compelled to take his loss than that we point the way to the circumvention of this very wholesome statutory provision.

*By the Court.*—Judgment affirmed.