ABC OUTDOOR ADVERTISING, INC., Respondent, v.
DOLHUN'S MARINE, INC., Appellant.

*February 27—April 9, 1968.*

For the appellant there were briefs and oral argument by *Martin J. Price* of Milwaukee.

For the respondent there was a brief and oral argument by *Clayton A. Cramer* of Waukesha.

BEILFUSS, J.   Three issues are presented on this appeal:

1. Does the record show an oral agreement to cancel the contract?

2. May a written contract within the statute of frauds be cancelled or terminated by a subsequent oral agreement?

3. Of what effect is a provision in a written contract forbidding cancellation unless in writing?

The evidence is overwhelming that an oral agreement of cancellation was entered into by Dolhun and ABC's representative, William Hayes. Hayes himself testified

he was called to Dolhun's office and there he entered into the oral agreement to cancel the contract. That Hayes had authority to enter into agreements with the defendant is undisputed. Donald Koepp, president of ABC, testified all previous transactions with Dolhun relative to other signs had always been negotiated for ABC by Hayes. Hayes testified that in the course of his dealings with Dolhun he had made many agreements and that the company, ABC, had always carried out these agreements.

"It is the well settled rule that if a principal so conducts his business as to lead the public to believe that his agent has authority to contract in the name of the principal, he is bound by the acts of such agent within the scope of his apparent authority as to contracts with persons who, acting in good faith, believe and have reasonable ground to believe that the agent has such authority." *Sickinger v. Raymond* (1922), 178 Wis. 439, 446, 190 N. W. 93.

Even if it could be established that Hayes had no legal authority to bind ABC in the cancellation, it is well settled that a principal's failure to repudiate the transaction raises an inference of affirmance of the agent's unauthorized transaction. *Home Savings Bank v. Gertenbach* (1955), 270 Wis. 386, 71 N. W. 2d 347, 72 N. W. 2d 697; *Zuehlke v. Ott* (1936), 221 Wis. 89, 266 N. W. 242; *Senger v. Malloy* (1913), 153 Wis. 245, 141 N. W. 6

ABC made no attempt to repudiate Hayes' authority to cancel the contract. Hayes, himself, went back a few days after the agreement to cancel and attempted to get Dolhun to sign a "resale agreement." According to Hayes, Dolhun refused to look at this "resale agreement." It does not appear whether Dolhun knew what was contained in the resale agreement but if he did his refusal to agree to it is understandable.

The agreement contained the following clause:

"We understand and agree that billing will continue to be rendered to us under the present contract until this

space has been sold to a new advertiser and we agree to accept and make payment for such billing when it becomes due."

Dolhun, for the defendant, had made an agreement which he believed relieved it of making further payments on the contract and it is comprehensible that he would refuse to recommit the defendant to further payments.

Further evidence of ABC's ratification of Hayes' agreement with Dolhun is the fact that ABC did not make any attempt to return the check which Dolhun issued. Rather, it chose to retain the check without cashing it up to the time of trial. The check still remains uncashed and is a part of the record on this appeal.

Both Hayes and Dolhun testified that at the time the written contract was entered into Dolhun stated that his company might discontinue sales of boats and accessories (the sale of boats was the advertising message on the sign), and that he would want to be able to cancel the contract and that Hayes told Dolhun if the company did discontinue boat sales the contract could be cancelled.[1] Consistent with these prior statements, Hayes and Dolhun did, subsequent to the date of the written contract, enter into the oral agreement to cancel the contract. The consideration for the oral agreement was Dolhun's payment of $50 and ABC's immediate right to use the sign for other purposes.

From the foregoing we conclude, beyond reasonable dispute, that there was an oral agreement to cancel the written contract.

A more troublesome issue is whether a contract required to be in writing under the statute of frauds may be cancelled or terminated by subsequent oral agreement.

---

[1] By this statement of fact we do not mean to imply that statements made prior to or contemporaneous with the written contract can be used to contest the unambiguous provisions of a written contract. This statement of fact is only corroborative evidence that the parties subsequently orally agreed to cancel the contract.

The November 15, 1963, contract between Dolhun and ABC was not by its terms to be fully performed within one year and was, therefore, required to be in writing by the statute of frauds, sec. 241.02 (1).

The plaintiff-respondent cites *Gutknecht v. C. A. Lawton Co.* (1939), 231 Wis. 413, 285 N. W. 411, as authority for its contention that a written contract within the statute of frauds cannot be cancelled [2] by oral agreement. The following statement appears in *Gutknecht* at page 417:

"The weight of authority at the present time is that regardless of whether a prior contract is oral or is in a sealed or unsealed writing, it may be rescinded or modified orally unless the original agreement was within the statute of frauds. Restatement, Contracts, p. 768, sec. 407." [3]

The court then continued by holding that a part of the contract involved in the case which was within the requirements of the statute of frauds "was subject to the rules which forbid oral modification." The court's interpretation of the restatement in *Gutknecht*, however, applies only to the oral modification of a contract which is within the requirement of the statute of frauds. Sec. 407 of the Restatement, p. 768, states:

---

[2] The parties, in their briefs, and some of the authorities cited, have on occasion used "cancel" and "rescission" interchangeably. While the legal distinction of the terms may not be material to the case at hand, we prefer to use cancellation or termination:

" 'Termination' or 'cancellation' of conditional contract means to abrogate so much of it as remains unperformed, doing away with existing agreement under agreed terms and consequences, and termination or cancellation is distinguished from 'rescission,' which means to restore the parties to their former position. *Sanborn v. Ballanfonte,* 277 Pac. 152, 155, 98 Cal. App. 482." 37 Words and Phrases (perm. ed.), Rescission, p. 160.

[3] An examination of Shepard, *Wisconsin Citation,* does not list any subsequent cases that cite *Gutknecht, supra.*

*"Oral Agreements of Rescission.*

"The fact that an agreement to rescind or modify a prior contract is oral does not render it inoperative except in the cases and to the extent that a Statute of Frauds requires, under the rules stated in secs. 222–224, whether the prior contract is oral or is in a sealed or unsealed writing."

Sec. 222 of the Restatement, p. 299, provides:

*"Oral Rescission of a Contract Within the Statute.*

"A contract within the Statute, whether or not made enforceable by satisfaction of its requirements, may be orally rescinded, unless the prior contract is enforceable and the contract to rescind involves the re-transfer of some subject-matter which is within the Statute."

The conclusion is that because a contract is within the statute of frauds does not mean it cannot be rescinded by oral agreement in all cases. It is only forbidden when the rescission itself must meet the requirements of the statute. An example is a transfer of land. A subsequent agreement to rescind the transfer must be in writing because a transfer (back) of the real estate is involved. (*See* Illustration 3 to Restatement, pp. 299, 300, sec. 222.)

Both Professor Corbin and, of course, Professor Williston, are in accord with the Restatement.[4] Professor Corbin states in 2 Corbin, *Contracts*, pp. 91–96, sec. 302:

"If the subsequent agreement is purely one of rescission, without any other substitution for or variation of an earlier contract, it is hardly ever within the statute. The only exception to this rule appears to be where property is involved as well as contract, and even here the cases are in conflict. . . .

". . .

". . . A written contract that is not to be performed within a year can easily be rescinded in a moment and the rescission may be unwritten."

And 4 Williston, *Contracts* (3d ed.), pp. 207–210, sec. 592, is particularly in point:

---

[4] *See also* Simpson, *Contracts* (hornbook series), p. 418, sec. 207.

*"Rescission of Contracts Within the Statute of Frauds.*

"If an executory contract is within the Statute of Frauds and is in writing . . . a subsequent oral agreement to rescind the contract is effectual if the oral agreement fulfills the requisites of a contract at common law. The Statute of Frauds does not mention contracts of rescission or discharge and such contracts are, therefore, not affected by its terms. It should be clear, however, that, if a contract has been partly executed by the transfer of title to either real or personal property, an agreement of rescission which contemplates not simply a discharge of unexecuted obligations but a retransfer of the property must be within the section of the Statute relating to sales of land or that relating to sales of goods. Thus, in a case involving a question as to whether the oral agreement was an *alteration* or a *cancellation* of a written contract for the rental of two road scrapers, the court said:

" 'The parties to the executory written agreement were privileged to terminate it at any time by mutual consent independently of any express agreement so providing and it is immaterial whether such termination be characterized an abandonment, cancellation, mutual rescission or waiver. The effect is the same—to relieve the parties from going forward under the written instrument, and this may be accomplished by parol, *and the fact of its having been done established by evidence of the acts and declarations of the parties.*

" 'There can be no question but what a contract may be mutually abandoned or modified by the parties at any stage of performance, and each of the parties released from further obligation on account thereof; that it may be accomplished by parol, and the fact of its having been done established by evidence of the acts and declarations of the parties.

" 'It is clear then that a written contract may be cancelled by mutual consent . . . and that the cancellation may be oral.

" 'The statute of frauds does not preclude oral rescission of a prior written contract that is within the statute. But, if the prior contract effected a change in ownership of goods, an agreement to rescind is, in effect, an agreement to change the ownership again, and such agreement requires the same formality as the orig-

inal transfer. Or, stated another way, the statute of frauds must be complied with.' . . ."

It is clear, then, that the written contract under consideration in this case could be terminated or cancelled by oral agreement even though it could not, by its terms, be performed in one year and, consequently, was required by the statute of frauds to be in writing. This is so because the cancellation did not call for a retransfer or reconveyance of property conveyed or transferred under the original written contract.

It is also contended that the contract between the parties contained a clause which renders it impossible to cancel or terminate. Paragraph 9 of the general conditions states:

"This contract shall become binding upon ABC Outdoor Advertising, Inc., upon its signed acceptance by a duly authorized officer of ABC Outdoor Advertising, Inc. This contract can be cancelled only by mutual consent, in writing, of the parties hereto, and shall be binding on the heirs, assigns or successors in business of the parties hereto."

2 Restatement, *Contracts*, p. 768, sec. 407, in Comment *(a)*, states that the rule of the section that a written agreement may be rescinded by oral agreement "is applicable even though the earlier contract provides that it can be rescinded or varied only by a written instrument."

Williston is in accord:

"Nor does it make any difference that the original written contract provided that it should not subsequently be varied except by writing. This stipulation itself may be rescinded by parol and any oral variation of the writing which may be agreed upon and which is supported by sufficient consideration is by necessary implication a rescission to that extent." 6 Williston, *Contracts* (Rev. ed.), p. 5179, sec. 1828.

And Corbin is also in accord:

"Any written contract, other than specialties not now being considered, can be rescinded or varied at will by the oral agreement of the parties; and this is held to be true, except as otherwise provided by statute, even of a written agreement that the contract shall not be orally varied or rescinded. Two contractors cannot by mutual agreement limit their power to control their legal relations by future mutual agreement. Nor can they in this manner prescribe new rules of evidence and procedure in the proof of facts and events." 6 Corbin, *Contracts,* pp. 206–208, sec. 1295.

We conclude that the parties entered into a valid enforceable oral contract to cancel the written contract of November 15, 1963.

The appellant urges that the retention of the check by ABC constitutes an accord and satisfaction. The theory of accord and satisfaction does not apply to the case at bar because there was an agreement to discharge the contract.

"An agreement to discharge a prior contract entered into before breach is a substitute contract; an agreement to discharge an existing liability under a prior contract, entered into after breach of it, is an accord." Simpson, *Contracts* (hornbook series), p. 419, sec. 208.

The check from Dolhun to ABC was sent as consideration pursuant to the oral agreement to cancel the contract; not as satisfaction of a liability after breach of the contract.

Because the $75 check has not been cashed and has become a part of the record herein as an exhibit, and because the judgment entered by the trial court encompassed elements not at issue on this appeal, the record must be remanded with directions to amend the judgment in accordance with this opinion.

*By the Court.*—Judgment reversed, and remanded with directions to enter judgment not inconsistent with this opinion.